# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Vicky A. Dietz and                                   Civil No. 10-3752 (DWF/TNL)
Terry B. Dietz,

               Plaintiffs,

v.                                                                  **MEMORANDUM**
                                                                **OPINION AND ORDER**
Beneficial Loan and Thrift Co., a
Minnesota corporation, and John
and Jane Does 1-10,

               Defendants.

_____

Michael J. Keogh, Esq., Keogh Law Office, counsel for Plaintiffs.

Chad A. Snyder, Esq., and Michael H. Frasier, Esq., Snyder Gislason Frasier LLC,
counsel for Beneficial Loan and Thrift Co.

_____

## INTRODUCTION

This matter is before the Court on a Motion to Dismiss brought by Defendant

Beneficial Loan and Thrift Co. ("Beneficial"). For the reasons set forth below, the Court

grants the motion.

**BACKGROUND**

On December 15, 2006, Plaintiffs entered into a loan agreement with Beneficial in the principal amount of $292,450.  (Second Am. Compl. ¶ 13, Ex. 2.)  The loan was a refinance of an existing home, with additional funds to pay off multiple consumer debts. (*Id*. ¶ 17.)  At the closing, Plaintiffs were provided copies of various documents, including a Loan Agreement (including Truth-in-Lending Disclosure), a Mortgage security instrument, a HUD-1A Settlement Statement, and four copies of a Notice of Right to Cancel.  (*Id*. ¶15, Ex. 2.)

In November 2008, Plaintiffs stopped making payments on the loan.  (*Id*. ¶ 30, Ex. 5 (noting that "as of December 8, 2009, payment on [Plaintiffs'] account is 383 days past due" and that "the foreclosure process has been initiated").)  On November 23, 2009, Plaintiffs sent Beneficial a document entitled "Actual Notice to Rescind; Notice Pursuant to RESPA (QWR); & Request for Accounting."  (*Id*. ¶ 28, Ex. 4.)  In the November 23, 2009 notice, Plaintiffs indicated that they "did not receive the correct Truth in [L]ending Disclosure Statements," that Beneficial's "failure to provide effective notice of these mandatory disclosures effectively extends our rescission rights under 15 U.S.C. § 1635(f)," and that Plaintiffs "hereby give effective notice to rescind."  (*Id*. ¶ 28, Ex. 4 at 1.)

The November 23, 2009 notice also states that it is a "qualified written request" ("QWR") as defined by 12 U.S.C. § 2605(e)(1)(B), and requests various documents and information.  (*Id*. ¶ 28, Ex. 4 at 2.)  The requested information includes, in summary, (1) a complete and detailed payment history on the account; (2) an explanation of how

2

the "Amount Financed" was calculated by the underwriter in the Truth in Lending

Disclosure Statement and supporting documentation; (3) the amount of and other

information regarding various expenses or fees charged (such as fees for appraisal and

title insurance); (4-6) certified copies of various agreements between Beneficial and other

financial entities that relate to Plaintiffs' account (i.e., Master Pooling and Service

Agreements, recourse agreements, trust agreements); (7) certified copies of Truth in

Lending disclosures provided at closing; (8) certified copies of documents sent to

Plaintiffs by previous servicers or sub-servicers; (9) "accounting ledger cards" and

similar documents regarding "the crediting of any and all Promissory Notes, money

equivalents, or similar instruments, identified as or evidencing assets provided by and/or

signed by the borrowers and consumers related to this Account"; (10) "[a] certified copy

of disclosures in [Beneficial's] file allegedly provided at any alleged closing or

consummation"; (11) a copy of all account receivables or payable relating to Plaintiffs'

account; (12) the particulars of Plaintiffs' account setting forth each item recorded since

origination; (13)  an identification of the source of funds used to fund the loan; (14) an

identification of the source of funds used by Beneficial to purchase any Promissory Notes

and similar instruments; and (15) certified copies of all checks obtained or issued by

Beneficial and used to fund this obligation.  (*Id*. ¶ 28, Ex. 4. at 2-4.)  Plaintiffs also

requested various documents related to public disclosure of securities under SEC rules.

(*Id*. at 4-5.)

On December 8, 2009, Beneficial responded to Plaintiffs' November 23, 2009

notice.  The response reads, in relevant part:

After a thorough review of your inquiry, we are unable to determine any specific error that you believe has occurred in the servicing of the referenced account, nor any specific corrective action you are seeking.  If you have any items of concern, please specifically identify your concerns so that we may evaluate them accordingly.

Because your inquiry contained several information requests, we have enclosed the following documents that are relevant and pertinent to the servicing of the referenced account for your review:

- Loan Agreement (Including Truth-In-Lending Disclosure)
- Recorded Mortgage
- Optional Credit Insurance Disclosure
- Servicing Transfer Disclosure Statement
- Loan Summary
- Arbitration Rider
- Notice of Negative Credit Reporting Disclosure
- Notice of Right to Cancel
- Good Faith Estimates
- HUD-1A Settlement Statement
- Payment History

In reference to your request to initiate a rescission of the above referenced account; after a thorough review of your correspondence, we are unable to identify and/or validate the specific error(s) regarding the above referenced account that would allow for the transaction to be rescinded.  Please be advised that although your Beneficial loan is a joint account, we were only required to provide you with one copy of the Truth-In-Lending Disclosure at the signing of your loan.  If you believe any other item(s) are violations of the Truth-In-Lending Act, please identify them so that we may evaluate them accordingly.

(Second Am. Compl. ¶ 30, Ex. 5.)

On December 16, 2009, Plaintiffs were served with a Notice of Mortgage

Foreclosure Sale.  (*Id*. ¶ 46, Ex. 6.)   The foreclosure sale was held on July 15, 2010.

(*Id*.)

On or around August 25, 2010, Plaintiffs commenced this action.  Plaintiffs amended their complaint twice.  In their Second Amended Complaint, Plaintiffs allege four causes of action against Defendants:  Failure to Rescind Under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq*., and Reg. Z; violations of TILA and Reg. Z; violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq*., and a recoupment claim; and a claim under the Minnesota Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43, *et seq*. ("MDTPA").  Beneficial now moves to dismiss all of Plaintiffs' claims in the Second Amended Complaint.

## DISCUSSION

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant.  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged.  *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6).  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  Although a complaint need not contain "detailed factual allegations," it must

contain facts with enough specificity "to raise a right to relief above the speculative

level." *Id*. at 555.  As the United States Supreme Court recently reiterated, "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements,"

will not pass muster under *Twombly*.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)

(citing *Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise

a reasonable expectation that discovery will reveal evidence of [the claim]."  *Twombly*,

550 U.S. at 556.

## I.     TILA

In Counts 1 and 2 of their Second Amended Complaint, Plaintiffs assert claims for

failure to rescind and violations under TILA and its implementing regulations.  Beneficial

moves to dismiss these claims, arguing that they fail because Plaintiffs' rescission rights

expired prior to the initiation of this action, Plaintiffs' damages claims are barred by

TILA's one-year statute of limitations, and Plaintiffs are not entitled to rescission because

they have not alleged an ability to tender the loan amount to Beneficial.

Plaintiffs' principal demand under TILA is for rescission.  However, rescission

under TILA is conditioned on repayment of the amounts advanced by the lender.

*Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1170 (9th Cir. 2003).  The Court has

concluded that it is appropriate to dismiss rescission claims under TILA at the pleading

stage based on the plaintiff's failure to allege an ability to tender loan proceeds.  *See, e.g.*,

*Franz v. BAC Home Loans Servicing, LP*, Civil No. 10-2025 (DWF/FLN), 2011 WL

846835, at *3 (D. Minn. March 8, 2011) (citing *Garza v. Am. Home Mortg.*, No. CV F

08-1477 LJO GSA, 2009 WL 188604, at *5 (E.D. Cal.  Jan. 27, 2009) (stating that

"rescission is an empty remedy without [the borrower's] ability to pay back what she has received")); *Hintz v. JP Morgan Chase Bank*, Civil No. 10-119 (DWF/AJB), 2010 WL 4220486, at *4 (D. Minn. Oct. 20, 2010). Because Plaintiffs have failed to plead the ability to tender, their rescission claim is dismissed with prejudice.[1] However, the Court will stay the dismissal of Plaintiffs' TILA claims for forty-five (45) days to allow Plaintiffs to amend their claims. Should Plaintiffs fail to amend their TILA claims so as to adequately allege a claim for rescission within the prescribed time period, the claims will be dismissed with prejudice. The Court will address the parties' additional arguments regarding the merits and timeliness of Plaintiffs' TILA claims on a later motion to dismiss if this issue still remains.

Plaintiffs also seek damages under TILA. Beneficial submits that this claim should be dismissed because it is time-barred. Section 1640(e) provides that an action for damages under TILA must be brought "within one year from the date of the occurrence of the violation . . . ." 15 U.S.C. § 1640(e). Plaintiffs closed on their loan on or around December 15, 2006, but did not file this action until August 25, 2010. Therefore, to the extent that Plaintiffs' claim for damages under TILA is based on alleged violations that occurred at the closing, it is time-barred.[2]

---

[1]     In so concluding, the Court does not hold that a plaintiff must allege the ability to immediately tender the entire loan amount.

[2]     Plaintiffs argue that Defendants violated TILA by failing to respond to their valid rescission notice, thus allowing Plaintiffs a three-year period to rescind and an additional year to bring a claim of damages after Defendants allegedly denied their rescission

(Footnote Continued on Next Page)

## II.    RESPA

In Count 3 of the Second Amended Complaint, Plaintiffs allege that Defendants violated RESPA by failing to make appropriate corrections to Plaintiffs' account in response to the QWR, failing to transmit written notice of such corrections, failing to provide a reasonable explanation as to why all documentation and information sought was not provided within sixty days, and by providing information to consumer reporting agencies regarding alleged overdue payments related to the QWR.  Plaintiffs also assert that they are entitled to recoup the actual and statutory civil penalty provided by RESPA.

Beneficial asserts that Plaintiffs have failed to allege a RESPA violation. Specifically, Beneficial argues that the November 23, 2009 notice does not constitute a QWR under RESPA and that Plaintiffs have failed to allege any actual damages.

RESPA requires that when a "servicer of a federally related mortgage loan receives a [QWR] from the borrower . . . for information related to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days . . . unless the action requested is taken within such period."  12 U.S.C. § 2605(e)(1)(A).   According to Plaintiffs' Second Amended Complaint, Plaintiffs sent Beneficial a purported QWR on November 23, 2009.  (Second

---

(Footnote Continued From Previous Page)

notice.  (Doc. No. 12 at 7-8.)  However, as explained above, Plaintiffs have failed to state a claim for rescission.  Unless Plaintiffs are able to adequately allege such a claim, there appears to be no basis for Plaintiffs to avoid the one-year statute of limitations on their damage claim under TILA.

Am. Compl., Ex. 4.)  The parties dispute whether the November 23, 2009 notice

constitutes a QWR.

A QWR is a:

> written correspondence, other than notice on a payment coupon or other
> payment medium supplied by the servicer, that (i) includes, or otherwise
> enables the servicer to identify, the name and account of the buyer; and
> (ii)  includes a statement of the reasons for the belief of the borrower, to the
> extent applicable, that the account is in error or provides sufficient detail to
> the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

Based on the allegations in the Second Amended Complaint and the attached

purported QWR, the Court concludes that Plaintiffs' November 23, 2009 notice does not

constitute a QWR.  In the November 23, 2009 notice, Plaintiffs did not identify any

purported errors in Plaintiffs' account or request the correction of the same.   Nor did

they ask questions related to Beneficial's servicing of the loan or identify any errors in

loan servicing.  Instead, the notice identified a laundry list of requests for documents and

information, most of which are completely unrelated to the servicing of the loan and lie

outside the scope of RESPA.[3]  For example, Plaintiffs sought information related to the

loan's closing and origination, loan ownership and the contractual relationships between

Beneficial and other companies, unrelated general correspondence, the source of funds

---

[3]      "Servicing" means "receiving any scheduled periodic payments from a borrower
pursuant to the terms of any loan, including amounts for escrow accounts . . . and making
the payments of principal and interest and such other payments with respect to the
amounts received from the borrower as may be required pursuant to the terms of the
loan."  12 U.S.C. § 2605(i)(3).

used by Beneficial to purchase promissory notes or similar instruments, payments made or received by Beneficial to fund the loan, information regarding broker's services, and documents related to SEC rules.

Plaintiffs did request some information that could relate to the servicing of the loan, such as a request for a complete history of Plaintiffs' payments.  However, Plaintiffs did not identify any reasons for a belief that the account (or payment history) is in error and, in any event, Beneficial provided Plaintiffs' payment history in its December 8, 2009 correspondence.  (Second Am. Compl. ¶ 30, Ex. 5.)

In addition, even reading Plaintiffs' Second Amended Complaint liberally, Plaintiffs fail to adequately plead damages caused by the alleged failure to respond to the purported QWR.  Plaintiffs have not alleged any facts to show that Defendants' failure to respond to the purported QWR caused Plaintiffs harm.  Nothing in the Second Amended Complaint suggests that Plaintiffs needed any of the information requested in the letter in order to make payments on the property.  Thus the Second Amended Complaint fails to state facts that would show that any damage to Plaintiffs was attributable to Defendants' lack of response.[4]

---

[4]     In their Second Amended Complaint, Plaintiffs allege that "Defendants have willfully engaged in a pattern or practice of non-compliance with the requirements of the mortgage servicer provisions of RESPA as set forth in 12 U.S.C. § 2605."  (Second Am. Compl. ¶ 59.)  RESPA does allow for a civil penalty of $1,000 "in the case of a pattern or practice of noncompliance."  12 U.S.C. § 2605(f)(1)(B).  However, Plaintiffs' allegations regarding a pattern or practice are wholly conclusory and insufficient to state a cause of action.

For the above reasons, the Court concludes that Plaintiffs have failed to state a RESPA claim upon which relief can be granted.  The Court therefore dismisses Count 3 with prejudice.

## III.    Minnesota Deceptive Trade Practices Act

In Count 4 of their Second Amended Complaint, Plaintiffs assert a violation of the MDTPA.  Beneficial argues that this claim is properly dismissed because Plaintiffs have not pleaded the claim with particularity, they are not suing to obtain a public benefit, the alleged conduct does not fall within the MDTPA, and to the extent that Plaintiffs' MDTPA claims are based on violation of TILA or RESPA, they are preempted by federal law.  In their opposition, Plaintiffs do not respond to these arguments or otherwise provide any support for their MDTPA claim.

The MDTPA is governed by the heightened pleading standards of Fed. R. Civ. P. 9(b).  *See Russo v. NCS Pearson, Inc.*, 462 F. Supp. 2d 981, 1003 (D. Minn. 2006).  Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake."  Plaintiffs allege that they are acting in the capacity of a private attorney general "to remedy the ongoing unlawful, unfair and fraudulent business practices alleged herein":  that "Defendants . . . have committed acts of unfair competition proscribed by Minn. DTPA including the practices alleged herein"; that Defendants engaged in "'unlawful' business practices" and "'unfair' business practices"; that Defendants "have systematically violated the provisions of TILA, RESPA, the Transaction, the contract between the parties, and to such extent as to induce confusion of source, sponsorship of services, and rescission rights of Plaintiff"; and that "each

Defendant made one or more misrepresentations and/or failed to make accurate representations and/or failed to provide material information about the Transaction." (Second Am. Compl. ¶¶ 62-3, 66-7, 71.)

The Court concludes that Plaintiffs have failed to state a claim under the MDTPA. Plaintiffs have failed to allege a specific deceptive trade practice or any specifics as to who committed fraud, when the fraud was committed, or the nature of the fraud. Plaintiffs' allegations fail to satisfy Rule 9(b)'s particularity requirement and Count 4 is properly dismissed with prejudice.[5]

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1.      Beneficial's Motion to Dismiss (Doc. No. [4]) is **GRANTED**.

2.      Plaintiffs' Second Amended Complaint (Doc. No. [3]) is **DISMISSED WITH PREJUDICE.**

3.      As to Counts 1 and 2 only (Plaintiffs' TILA claims), this Order is **STAYED** for forty-five (45) days to allow Plaintiffs to amend their rescission claim. Should Plaintiffs amend the claim so as to adequately allege a rescission claim within the prescribed time period, the stay will be lifted as to Counts 1 and 2 and the Motion to Dismiss will be denied without prejudice.  The Court will entertain a future motion to dismiss should the Defendants take the position that the complaint, as amended,

---

[5]      Moreover, the Court agrees with Beneficial that Plaintiffs cannot bring a claim under the MDTPA because they are not seeking to obtain a public benefit.  *See DeVary v. Countrywide Home Loans, Inc*., 701 F. Supp. 2d 1096, 1109 (D. Minn. 2010).

continues to fail to state a claim under TILA.  Should Plaintiffs fail to amend the claim so as to adequately allege a rescission claim within the prescribed time period, the stay will be lifted and Counts 1 and 2 will be dismissed with prejudice.


Dated:  June 10, 2011                    s/Donovan W. Frank
                                         DONOVAN W. FRANK
                                         United States District Judge